AO 106 (Rev. 04/10) Application for a Search Warrant

FILED ___ ENTERED
LODGED ___ RECEIVED

AUG 14 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. MJ18-367
)
Three cellular phones recovered from Jevon Gipson )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Three cellular phones recovered from Jevon Gipson, as further described in Attachment A, attached hereto and incorporated herein by reference, currently in the custody of DEA Seattle

located in the _____Western_____ District of _____Washington_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, List of Items to be Seized, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute/Possess with Intent to Distribute Controlled Substances |
| 21 U.S.C. § 841 | Distribution/ Possession of Controlled Substances with Intent to Distribute |

The application is based on these facts:

See Affidavit of Terris Farabee, DEA Special Agent, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Terris Farabee, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 14 August 2018

_____
*Judge's signature*

City and state: Seattle, Washington    James P. Donohue, United States Magistrate Judge
*Printed name and title*

Attachment A

Property to Be Searched

The property to be searched comprises the following cellular telephones currently in the possession of the Drug Enforcement Administration:

a. **DEA Exhibit N-31:** a black Samsung cellular phone that displays T-Mobile on the screen upon shutdown. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

b. **DEA Exhibit N-32:** a "Blu" cellular phone that is gray and black in color. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

c. **DEA Exhibit N-33:** a Tracfone wireless "ZTE" cellular flip phone that is gray and black in color. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

Attachment B

Items to be Searched for and Seized

This warrant authorizes the seizure of the following items or materials that may contain evidence of the commission of, the fruits of, and/or property which has been used as the means of committing the following crimes: Distribution of, and possession with intent to distribute, controlled substances, in violation of 21 U.S.C. § 841(a)(1); and, conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 846:

- Assigned numbers and identifying telephone serial numbers (ESN, MIN, IMSI, or IMEI);
- Stored lists of recent received, sent, or missed calls;
- Stored contact information;
- Stored photographs related to the aforementioned crimes, including of narcotics, currency, evidence of suspected criminal activity, and/or the user of the phone and/or suspected co-conspirators, including any metadata (such as date and time of photograph, and embedded GPS data) associated with these photographs; and
- Stored text messages (including any attached digital files associated therewith) related to the aforementioned crimes of investigation or that may show the user of the phone and/or co-conspirators, including Apple iMessages, Blackberry Messenger messages, "WhatsApp" messages, or other similar messaging services where the data is stored on the telephone.

The search warrant authorizes imaging or otherwise copying all data contained on the subject devices. The search warrant also authorizes reasonable efforts to overcome any passcode protection of the subject devices.

Attachment B - 1

# AFFIDAVIT

State of Washington  )
                     )
County of King       )

Terris Farabee, being first duly sworn on oath, deposes and says:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent of the Drug Enforcement Administration, and have been so employed since June 2004. I have a Bachelor of Arts degree in Criminal Justice, attended the West Virginia State Police Academy, and was employed as a police officer with the City of Wheeling, West Virginia from 1996 to 2004. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). In that capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 841, et seq.

2. I am currently assigned to the Seattle Field Division. I have completed sixteen (16) weeks of DEA Basic Agent training at the DEA Academy in Quantico, Virginia. I have received training in law enforcement and investigation of the Controlled Substances Act. I have participated in narcotics investigations, service of search warrants, arrests, and seizures relating to the manufacture, distribution, and transportation of the controlled substances and offenses related to controlled substances violations such as money laundering, which have resulted in the arrest of individuals and the seizure of illicit narcotics and/or related evidence and the forfeiture of narcotics related assets. I have participated in debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles used by various traffickers in their efforts to import, conceal and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their

unlawful operations, and how they code their conversations to disguise their unlawful activities.

3. I was trained in undercover drug investigations for the purpose of safely conducting undercover operations and the procedures for the collection of evidence in an undercover investigation. I have participated in investigations involving organizations trafficking in controlled substances, including marijuana, cocaine, heroin, MDMA and methamphetamine, which have resulted in arrests of drug traffickers and seizures of controlled substances and currency. I have been involved in multiple long term investigations that have utilized wiretaps as part of the investigation. Those previous Title III investigations have resulted in multiple federal indictments and arrests.

## PURPOSE OF AFFIDAVIT

4. This affidavit is submitted for the limited purpose of establishing probable cause to search the following cellular telephones seized from Jevon Gipson as the time of his arrest on March 12, 2018:

   a. **DEA Exhibit N-31:** a black Samsung cellular phone that displays T-Mobile on the screen upon shutdown. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

   b. **DEA Exhibit N-32:** a "Blu" cellular phone that is gray and black in color. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

   c. **DEA Exhibit N-33:** a Tracfone wireless "ZTE" cellular flip phone that is gray and black in color. This phone is currently located at the DEA Seattle Division Office in the non-drug evidence vault.

5. Based on information described herein, I believe the cellular phones marked as **DEA Exhibits N-31, N-32, and N-33** were being used by Gipson to communicate with other drug traffickers and/or drug customers in order to facilitate the distribution of drugs in Washington, in violation of Title 21, United States Code, Sections 841 and 846.

AFFIDAVIT OF Terris Farabee- 2

6. Since this affidavit is being submitted for the limited purpose of securing authorization for a search warrant of the above described cellular telephones, I have not included every fact known concerning this investigation. I have set forth only the facts that I believe are necessary in light of the limited purpose of this application.

## SUMMARY OF PROBABLE CAUSE

### Authorization of Wire and Electronic Communication

7. On September 6, 2017, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications of (206) 890-5711 ("TT1") used by Michael Morgan and (206) 474-8971 ("TT4") used by Joseph Wilson. In doing so, Judge Robart found probable cause to believe that TT1 and TT4 were being used to further drug trafficking and related offenses. Interception pursuant to that order strengthened investigators' beliefs that Morgan, Wilson, and their associates were distributing narcotics in the Western Washington area. Interception ceased on or about October 5, 2017.

8. On November 3, 2017, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications for (206) 557-2885 ("TT12") used by Crystal Barquet, (253) 224-9829 ("TT15") used by Charles Cheatham, (850) 361-7470 ("TT17") used by Danavian Hunter, (206) 330-4359 ("TT18") used by Edward Locke, (206) 972-8851 ("TT19") used by Anthony Dao, and (253) 254-2227 ("TT21") used by Calvin Thomas. Interception of TT12 and TT19 ceased on November 16, 2017. Interception of TT15 and TT18 ceased on December 2, 2017. Interception of TT21 ceased on December 3, 2017. Interception of TT17 ceased on December 6, 2017.

9. On February 12, 2018, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications for (206) 501-5395 ("TT3") used by Johnny Davis, (850) 361-7470 ("TT17") used by Danavian Hunter, (206) 618-7657 ("TT40") used by Michael Morgan, (425) 529-7868 ("TT6") used by Railen Wheeler, (206) 619-2805

("TT41") used by Railen Wheeler, (323) 408-4784 ("TT24") used by Michael Davis, and (213) 833-8533 ("TT46") used by Charles Cheatham. In doing so, Judge Robart found probable cause to believe that the listed target telephones were being used to further drug trafficking and related offenses. Interception pursuant to that order began on February 13, 2018, and ceased on March 14, 2018. This further strengthened investigators' beliefs that the users of those phones, and their associates, were distributing narcotics in the Western Washington area.

10. In this Affidavit, I discuss telephone calls and text messages that were intercepted pursuant to the Orders identified above. I know through training and experience, including experience with this investigation, that individuals involved in the distribution of controlled substances and other criminal activity often use coded words and inferences when referring to their illegal activity. I have used this training and experience, as well as the training and experience of other law enforcement officers familiar with this investigation, to substitute what I believe to be an accurate translation for these coded words and inferences, which are included in parentheses in this affidavit. The following summaries are based on my review of intercepted communications, and from my discussions with other law enforcement officers familiar with this investigation who have reviewed the intercepted communications. The paragraphs herein include the summaries of pertinent portions of intercepted calls, and are not necessarily the entire conversations between the parties involved.

**Intercepted Calls between Jevon Gipson and Michael Morgan**

11. On February 20, 2018, Morgan placed an outgoing call (Session 334) to a male subject using 206-639-3018, later identified as Gipson (identification discussed below). During the call, Morgan and Gipson had the following exchange:

GIPSON: Bam, bam, what's up with it?
MORGAN: How about you [UI]
GIPSON: Uh, shit I was just checking on you bro man, need you to slide through man [U/I] holla at ya.

| | | |
|---|---|---|
| 1 | MORGAN: | Your crib? |
| 2 | GIPSON: | Uh. Shit not right now I just took off man. Uh. But I will be in |
| 3 | | about… huh? |
| 4 | MORGAN: | Go ahead. |
| 5 | GIPSON: | What you say a little bit later on tonight or something? |
| 6 | MORGAN: | Yeah that's cool. |
| 7 | GIPSON: | Uh, yeah I just need you to slide through man. |
| 8 | MORGAN: | I got you! |
| 9 | GIPSON: | Holla at you one time real quick. Yeah? |
| 10 | MORGAN: | Yeah. Alright. |

11   12.   Later on that same day, Gipson placed a call using 206-639-3018 to Morgan
12 (Session 337). During the call, Morgan and Gipson had the following exchange:

| | | |
|---|---|---|
| 13 | MORGAN: | Hello? |
| 14 | GIPSON: | What's up bug? Back out my way? |
| 15 | MORGAN: | Uh, no I'll be back up that way in a little bit. I'll call you [voices |
| 16 | | overlap] |
| 17 | GIPSON: | Uh [UI]. |
| 18 | MORGAN: | As soon as I leave. |
| 19 | GIPSON: | If not, don't trip bro it ain't no bother, you know what I'm saying I |
| 20 | | just want to let you know. You know because [UI] man. It ain't no. |
| 21 | MORGAN: | I'm gonna come tonight. As soon as my girl get in. |
| 22 | GIPSON: | Okay. Okay for sure. |

23   13.   Based upon my training and experience, and within context of other
24 conversations intercepted during the course of this investigation, I believe Gipson
25 purchases narcotics from Morgan. Based upon my experience in this investigation, I am
26 aware of the fact that Morgan is extremely conscientious in what he says over the phone.
27 Most individuals who speak with Morgan over the phone share the same level of vigilance
28 in their choice of words when discussing drug trafficking habits. When Gipson states in

AFFIDAVIT OF Terris Farabee- 5

part, "…need you to slide through man [U/I] holla at ya," I believe Gipson is referring to the fact that he wants to conduct business face to face with Morgan and purchase an unknown controlled substance from Morgan. Gipson goes so far as to re-iterate the statement near the end of the conversation by stating again that he was going to "Holla at you one time real quick." After several hours passed, Gipson called Morgan to check on his whereabouts. Once Morgan advised Gipson that he would be on the way in a little while, Gipson appeared to downplay the necessity for seeing Morgan by stating "don't trip bro it aint no bother…" I am aware that some customers of DTOs do not want to push the limits of their connections to their drug supply and will "play it cool" when speaking with their source. In this instance, I believe Morgan is the source of supply for Gipson and he assures Gipson that he will be coming by Gipson later that evening.

### Physical Surveillance of 206-639-3018

14. Investigators obtained a tracking warrant for 206-639-3018. On March 12, 2018, investigators conducted physical surveillance in conjunction with GPS data for 206-639-3018. At approximately 6:21 p.m., investigators went to an apartment complex at 15110 Macadam Road South in Tukwila, Washington. GPS data for 206-639-3018 indicated that the phone was in this vicinity. Investigators observed Jevon Gipson, identification discussed below, get into a white Kia Rio hatchback and depart.

15. Investigators conducting surveillance at 2101 Southwest Sunset Boulevard in Renton, Washington, observed the white Kia Rio hatchback arrive at this apartment complex and park. Investigators observed Gipson sit in the vehicle for a couple of minutes. Gipson got out and opened the hatchback of the vehicle. Gipson went to the trunk, looked both ways and behind himself. Investigators identified Gipson from his Washington driver license photograph. Gipson then began digging in the trunk. He pulled a large black and flat object from the trunk area. Investigators believe that this was the floorboard that may have covered the spare tire in the vehicle. As he did this, investigators observed Gipson looking over his shoulder and looking around. At one point, investigators saw Gipson remove a package wrapped in brown packaging material consistent with the size of a

kilogram of cocaine or other drug from the rear of the vehicle. Investigators observed Gipson put the object into a black, possibly plastic, bag. Gipson readjusted the suspect floor cover, draped a coat over his arm and the black plastic bag, closed the hatchback and walked to Building A.

16.  Investigators observed Gipson appear to use a key code or prox card to access the common access lockout door to Building A. Investigators observed Gipson walk to the third level and enter Apartment 308 using a key.

17.  At approximately 7:00 p.m., investigators saw Gipson exit the apartment, walk to the Kia Rio hatchback, and depart. Investigators followed Gipson away until a uniformed Seattle Police Officer was able to stop the Kia Rio hatchback. The officer had Gipson step out of the vehicle. As Gipson stepped out of the vehicle, the officer could see, what appeared to be, based upon his training and experience, a one ounce package of cocaine or methamphetamine in the driver's door storage compartment. The officer proceeded to frisk Gipson, finding a hard object in his front right pants pocket. The officer removed the item, finding another ounce of narcotics. A narcotics detective at the stop identified the substance as cocaine based upon his training and experience.

18.  Investigators then searched the Kia Rio for additional evidence, locating approximately one kilogram of cocaine (field test positive), as well as a scale, razor blade, and kilo packing material each with suspected cocaine residue. Investigators also located three cellular telephones together on the front passenger seat of the Kia Rio, described above as **DEA Exhibits N-31, N-32, and N-33.**

19.  All drug exhibits were submitted to the Western Laboratory for analysis and the cellular phones were submitted into the DEA non-drug evidence vault for safekeeping.

**SEARCH WARRANT AT 2101 SW SUNSET BOULEVARD, APT. A-308, RENTON, WASHINGTON**

20.  On March 12, 2018, a federal search warrant was obtained from United States Magistrate Judge Brian Tsuchida of the Western District of Washington, authorizing a

search of 2101 SW Sunset Boulevard, Apartment A-308, Renton, Washington, which was the apartment where law enforcement had seen Gipson on March 12, 2018.

21. At approximately 11:40 pm, investigators approached the target location. All agents/officers were wearing clothing clearly marked with "Police" along with police insignias and were wearing ballistic gear. Investigators knocked and announced, "Police, search warrant" at the front apartment door. After no response, investigators breached the front door to gain entry. No persons were located in the apartment.

22. Investigators then conducted a systematic and thorough search of the apartment. During the search, investigators located and seized suspected cocaine from a bedroom, $10,500.00 US currency wrapped in several plastic bags in the kitchen island counter bottom cupboard, and $9,630.00 US currency was located in the pockets of clothing.

23. On March 13, 2018 at approximately 12:45 am, investigators concluded the search of the apartment.

24. The suspected cocaine was later submitted to the Western Laboratory for analysis, and the $20,130.00 US currency was transferred to the United States Marshals Service pending forfeiture proceedings.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

25. Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

   a. Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Traffickers commonly maintain this information in their cellular telephones. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing drug trafficking. Traffickers often change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

b. Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and vehicles. This evidence often includes not only contraband and paraphernalia, but also financial records, records of property and vehicle ownership, records of property rented, and other documentary evidence relating to their crimes. Drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product. These individuals often maintain these photographs and recordings in their possession, on their cellular phones, or at their premises.

c. Traffickers frequently maintain records, books, notes, ledgers, travel documents, and cellular phones relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

d. Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions and evidence of consequential financial transactions, relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers often have money counters.

e. Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period

of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

26. As noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

    a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

AFFIDAVIT OF Terris Farabee- 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c. Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.

e. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

//
//
//

## CONCLUSION

27. Based upon the information discussed above, and on the experience and knowledge of other agents and officers involved in this investigation, I respectfully submit there is probable cause to believe **DEA Exhibits N-31, N-32, and N-33** were being used to facilitate violation of the federal controlled substance laws and related offenses in the Western District of Washington.

_____
Terris Farabee, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this _14th_ day of August, 2018.

_____
The Honorable James P. Donohue
United States Magistrate Judge